OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



June 3, 1999

Ms. Linda Cloud
Executive Director
Texas Lottery Commission
P.O. Box 16630
Austin, Texas 78761-6630

Opinion No. JC-0064

Re: Whether the Lottery Commission may renew an expired license to conduct bingo games or to sell lottery tickets, and related questions (RQ-1195)

Dear Ms. Cloud:

You ask several questions about the Texas Lottery Commission's authority under the State Lottery Act, TEX. GOV'T CODE ANN. ch. 466 (Vernon 1998), and the Bingo Enabling Act, TEX. REV. CIV. STAT. ANN. art. 179d (Vernon Supp. 1999), to "revive," as you say, an expired or ineffective license. We conclude that the Texas Lottery Commission (the "Commission") may not revive an expired license and may renew an expired or lapsed license under either act only if the licensee sent the renewal application to the Commission on or before the date the previous license expired. We begin by examining each of the acts you cite.

Under the Bingo Enabling Act, an organization generally may not conduct bingo games unless it is licensed to do so. *See id.* § 12(a); 16 TEX. ADMIN. CODE § 402.545(a)(1) (1998) (Tex. Lottery Comm'n, Bingo Regulations & Tax); *see also* TEX. REV. CIV. STAT. ANN. art. 179d, § 2(11) (Vernon Supp. 1999) (defining "authorized organization"). A license is effective for no longer than one year unless the Commission revokes or suspends it. *See* TEX. REV. CIV. STAT. ANN. art. 179d, §§ 13(h), 13c(b) (Vernon Supp. 1999); 16 TEX. ADMIN. CODE § 402.545(a)(3)(A) (1998) (Tex. Lottery Comm'n, Bingo Regulations & Tax). Neither the Bingo Enabling Act nor rules promulgated under the act's authority indicates when a licensee must file a renewal application for the application to be timely. *Cf.* TEX. GOV'T CODE ANN. § 466.158(c) (Vernon 1998) (requiring lottery ticket sales agency to file renewal application before license expires).

Similarly, under the State Lottery Act, a person who is not a Commission employee must be licensed as a sales agent if the person is to sell lottery tickets. *See* TEX. GOV'T CODE ANN. § 466.151(a) (Vernon 1998); 16 TEX. ADMIN. CODE § 401.151(a) (1998) (Tex. Lottery Comm'n, Administration of State Lottery Act). A license that is not suspended or revoked generally expires no later than two years after it was issued. *See* TEX. GOV'T CODE ANN. § 466.158(a); 16 TEX. ADMIN. CODE § 401.155(a)(1) (1998) (Tex. Lottery Comm'n, Administration of State Lottery Act). A sales agent must apply for renewal in accordance with Commission rules, *see* TEX. GOV'T CODE ANN. § 466.158(b), (c) (Vernon 1998); 16 TEX. ADMIN. CODE § 401.156 (1998) (Tex. Lottery Comm'n, Administration of State Lottery Act), but, in accordance with the statute, a "sales agent

must file a renewal application and pay the renewal fee before the sales agent's license expires." *See* TEX. GOV'T CODE ANN. § 466.158(c) (1998); *accord* 16 TEX. ADMIN. CODE § 401.156(a) (1998) (Tex. Lottery Comm'n, Administration of State Lottery Act).

Although you do not cite the Administrative Procedure Act (the "APA"), TEX. GOV'T CODE ANN. ch. 2001 (Vernon 1999), we believe it is pertinent. The Commission, a state agency, is subject to the APA. *See id.* § 2001.003(7) (defining "state agency"). In general, the APA directs that, regardless of the expiration date that may be printed on a license, a license for an activity of a continuing nature does not expire until the licensing agency has made a final determination on a timely and sufficient renewal application:

> If a license holder makes timely and sufficient application for the renewal of a license or for a new license for an activity of a continuing nature, the existing license does not expire until the application has been finally determined by the state agency. If the application is denied or the terms of the new license are limited, the existing license does not expire until the last day for seeking review of the agency order or a later date fixed by order of the reviewing court.

*Id.* § 2001.054(b); *see also id.* § 2001.003(2), (3) (defining "license" and "licensing," respectively). Because conducting bingo games on a nontemporary basis and selling lottery tickets are activities of a continuing nature, licensure for these activities is subject to this APA provision.

We turn to your questions. You first ask whether the Commission is expressly authorized to revive an expired or ineffective license. It is not authorized to do so where a timely renewal application was not filed. Where the legislature has desired to provide a grace period for licensees or to except a specific group from licensure requirements, it has done so expressly. We find no grace period or excepted groups in the Bingo Enabling Act, the State Lottery Act, or the APA. *See* Tex. Att'y Gen. Op. No. JM-796 (1987) at 2-3 (pertaining to dentists and dental hygienists).

You next ask whether the Commission is authorized to approve the renewal application of an expired or no longer effective lottery-retailer or charitable-bingo license. We conclude, for the reasons stated in answer to your first question, that the Commission may approve a renewal application only if it was submitted in a timely manner. *Cf. Texas Dep't of Pub. Safety v. Pryor*, 329 S.W.2d 85, 87 (Tex. 1950) (stating that Respondent's expired commercial operator's license could no longer be renewed).

You also question whether the Commission may act only upon a renewal application that it received on or before the date the license expired. We conclude that the renewal application must be sent, but not necessarily received, on or before the expiration date. The State Lottery Act explicitly requires a renewal application to be "filed" on or before the expiration date. *See* TEX. GOV'T CODE ANN. § 466.158(c) (Vernon 1998); *accord* 16 TEX. ADMIN. CODE § 401.156(a) (1998)

(Tex. Lottery Comm'n, Administration of State Lottery Act). Because you do not inform us to the contrary, we assume that the Commission applies the same requirement to applications to renew licenses to conduct bingo games, although neither the Bingo Enabling Act nor Commission rules stipulate one way or the other. The Commission's rules stipulate that an application is "filed" when it is sent, via mail or fax, for example, to the Commission:

> Documents required to be filed or served are considered filed or served when actually received or are deemed filed or served when deposited with the United States Postal Service or private mail service, postage or delivery charges paid, or sent by facsimile transmission. The postmark, shipping, or transmission date indicated on a document is presumed to be the date of service, but this is a rebuttable presumption.

16 TEX. ADMIN. CODE § 401.221 (1998) (Tex. Lottery Comm'n, Administration of State Lottery Act). In accordance with the Commission's own rule, then, a renewal application is timely submitted to the Commission and must be acted upon if the application is sent or transmitted to the Commission on or before the date the license is set to expire.

You next ask whether the Commission may approve a temporary charitable-bingo authorization or a lottery-retailer provisional license after the original license has expired or is no longer effective. Under the APA, if the licensee timely sent a sufficient renewal application, the expiration is tolled until the Commission finally determines the renewal application. *See* TEX. GOV'T CODE ANN. § 2001.054(b) (Vernon 1999). Consequently, the Commission need not grant a temporary or provisional license to a licensee who timely submitted a renewal application. With respect to a licensee who did not submit a timely renewal application, on the other hand, we conclude the Commission may not issue a temporary renewal authorization or a provisional renewal license. Our reasons differ for each act, though.

Under the Bingo Enabling Act, the Commission must issue a temporary authorization to conduct bingo games when the Commission fails to finally determine a license application before the thirty-first day after the applicant submitted a sufficient application. *See* TEX. REV. CIV. STAT. ANN. art. 179d, § 13(b) (Vernon Supp. 1999). By rule, the Commission has directed that a temporary authorization is available only to a person who is not licensed but who has filed an "original application." 16 TEX. ADMIN. CODE § 402.546(a) (1998) (Tex. Lottery Comm'n, Bingo Regulation & Tax). This rule speaks to an application for a new or original license, and not to a renewal. *See id.* Thus, the Commission may not issue a temporary charitable-bingo license if the applicant is seeking to renew the license.

Under the State Lottery Act, on the other hand, the Commission may issue a provisional license to sell lottery tickets, which expires on the date specified on the license. *See* TEX. GOV'T CODE ANN. § 466.151(b) (Vernon 1998) (authorizing executive director of Commission to establish provisional license); 16 TEX. ADMIN. CODE § 401.157 (1998) (Tex. Lottery Comm'n, Administration of State Lottery Act) (authorizing director to issue provisional licenses). We find nothing in the

statutes or the rules that limits the issuance of a provisional license to an original applicant. But because the Commission is precluded from issuing a renewal license to an applicant who did not timely submit a renewal application, we believe the Commission is similarly precluded from issuing a provisional, or "interim," see BLACK'S LAW DICTIONARY 1102 (5th ed. 1979) (defining "provisional"), renewal license to the same applicant.

If, as we have concluded, the Commission lacks express statutory authority to renew lapsed licenses or to issue interim or temporary licenses to applicants for renewal, you ask whether the Commission has implied authority to take those actions. A state agency has only those powers it has been expressly granted by statute or that may be necessarily implied therefrom. *See Texas Parks & Wildlife Dep't v. Callaway*, 971 S.W.2d 145, 148 (Tex. App.–Austin 1998, no writ) (citing *Texas v. Jackson*, 376 S.W.2d 341, 344 (Tex. 1964); *Texas Dep't of Human Servs. v. Christian Care Ctrs., Inc.*, 826 S.W.2d 715, 719 (Tex. App.–Austin 1992, writ denied)). We find no implied authority vested in the Commission to renew a license that the Commission is not expressly authorized to renew. Nor, in answer to your sixth question, do we find any authority, express or implied, for the Commission to renew on equitable grounds a license that could not otherwise be renewed. Rather, both acts appear to establish a detailed licensing scheme that the Commission is to strictly enforce. *See* TEX. GOV'T CODE ANN. § 466.015(a) (Vernon 1998) (requiring Commission to exercise "strict control and close supervision over all lottery games"); *id.* §§ 466.151 - 466.160 (licensing provisions); TEX. REV. CIV. STAT. ANN. art. 179d, §§ 12, 13 (Vernon Supp. 1999) (providing for licensing and investigation of applicants); *id.* § 16(a) (requiring Commission to exercise strict control and close supervision over bingo games).

Because the Commission cannot approve the renewal of an expired or a lapsed license and cannot issue a temporary authorization—in the case of a license to conduct bingo games—or a provisional license—in the case of a license to sell lottery tickets—the Commission's only option is to require the former licensee to submit a new original license application. If, on the other hand, the licensee timely submitted the renewal application but the Commission is unable to review the application before the license expires, then, under the APA, the license continues to be valid until the Commission makes a final determination on the renewal application. *See* TEX. GOV'T CODE ANN. § 2001.054(b) (Vernon 1999) (tolling provision).

## S U M M A R Y

The Lottery Commission may renew a license to conduct bingo games or a license to sell lottery tickets only if the licensee mailed or faxed a sufficient application on or before the date the original license was to expire. The Lottery Commission has no authority, express, implied, or in equity, to renew a license if the renewal application was untimely.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General